Lynda D. DAHLKE, Petitioner-Respondent,

v.

James S. DAHLKE, Respondent-Appellant.†

Court of Appeals

*No. 02–0194. Submitted on briefs September 12, 2002.—Decided October 30, 2002.*

2002 WI App 282

(Also reported in 654 N.W.2d 73.)

† Petition for review denied 2-19-03.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Timothy J. Andringa* of *Cramer, Multhauf & Hammes, L.L.P.* of Waukesha.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Charles I. Phillips* of *Phillips & Gemignani* of Waukesha, and *Julie M. Gay* of *Brenner, Brenner & Wall, L.L.P.* of Waukesha.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. NETTESHEIM, P.J. The family court denied James S. Dahlke's postjudgment motion seeking: (1) a reduction in his maintenance payments to his former wife, Lynda D. Dahlke; and (2) reimbursement for one-half of the college expenses he had paid for the parties' two adult children. In addition, the court included James' interest and dividend income when computing James' maintenance obligation for the 2000 tax year.

¶ 2. James appeals. He contends. that the family court erred in denying his motion for a reduction in the percentage of maintenance payable to Lynda based on a substantial change in his circumstances—a significant reduction in his income. James additionally argues under a theory of "unjust enrichment" that he is entitled to reimbursement for one-half of all college expenses he paid for the parties' adult children. Because the percentage maintenance order adequately addresses James' reduction in income, we conclude that the family court did not err in denying James' motion for a reduction of maintenance. We further conclude James is not entitled to reimbursement from Lynda for the children's college expenses under the law of unjust enrichment. Finally, we hold that the family court properly included James' interest and dividend income when computing James' maintenance obligation for the 2000 tax year. We affirm the postjudgment order.

## BACKGROUND

¶ 3. James and Lynda were divorced on January 15, 1999, following a bench trial on the issue of main-

tenance before Judge Patrick C. Haughney.[1] Judge Haughney rendered a bench decision which was later set forth in the judgment of divorce. The judgment required James to pay maintenance to Lynda in the amount of thirty-five percent (35%) of his earnings between a base of $100,000 and a cap of $568,000. Based on James' variable income, Judge Haughney concluded that a percentage maintenance award was more appropriate than a fixed dollar award. Both parties appealed from the maintenance provisions of the judgment and we affirmed in an unpublished opinion. *See Dahlke v. Dahlke*, No. 99–1398, unpublished slip op. (Wis. Ct. App. May 3, 2000).

¶ 4. While the appeal was pending before this court, both Lynda and James filed postjudgment motions. The motions were heard by Judge Lee S. Dreyfus. In her motion, Lynda sought to reopen the property division provisions of the judgment and James requested a modification of maintenance based in part upon his payment of their children's college expenses. By a written decision, Judge Dreyfus denied both motions. Again both parties appealed. However, they later voluntarily dismissed the appeals.

¶ 5. The current appeal relates to further postjudgment motions before Judge Dreyfus filed by both parties. On January 16, 2001, James filed a motion seeking a reduction in maintenance and order for "reimbursement for unjust enrichment for overpayment of maintenance." James' unjust enrichment claim pertained to his payment of the college expenses of the parties' two adult children. On March 15, 2001, Lynda

---

[1] All other issues were addressed in the parties' marital settlement agreement, which was incorporated in the trial court's Findings of Facts, Conclusions of Law and Judgment of Divorce.

filed a motion requesting the court to dismiss James' motion on the basis of mootness, issue preclusion and failure to state a claim. On May 21, 2001, Lynda filed another motion seeking a computation of the maintenance arrearage for the calendar year 2000 and an order directing how that arrearage should be paid.

¶ 6. Following a motion hearing on November 16, 2001, Judge Dreyfus issued a bench decision followed by a number of clarification rulings. The end result of these rulings was an order denying James' motion for modification or reduction in maintenance, denying James' request for reimbursement of one-half of the college expenses, and granting Lynda's request for a determination of maintenance due for the year 2000. In computing James' 2000 income, Judge Dreyfus included James' interest and dividend income.[2] The order also found James in contempt for failure to pay the full amount of maintenance due to Lynda for the year 2000. James appeals.

## DISCUSSION

### Modification of Maintenance

¶ 7. James first argues that Judge Dreyfus erred in denying his motion to modify maintenance. James contends that he demonstrated a substantial change in circumstances based upon the significant decrease in his employment earnings and Lynda's reduced need for maintenance since the time of the divorce.

---

[2] The trial court had initially determined that James owed $42,338.88 in past due maintenance.

¶ 8. Under Wis. Stat. § 767.32 (1999–2000),[3] a trial court may revise a maintenance order if there has been a substantial change in the parties' financial circumstances. *See Erath v. Erath*, 141 Wis. 2d 948, 953, 417 N.W.2d 407, 409 (Ct. App. 1987). The question of whether there has been a substantial change of circumstances presents a mixed question of fact and law. *Rosplock v. Rosplock*, 217 Wis. 2d 22, 32–33, 577 N.W.2d 32 (Ct. App. 1998). The trial court's findings of fact regarding the parties' circumstances "before" and "after" the divorce and whether a change has occurred will not be disturbed unless clearly erroneous. *Id.* at 33. However, whether the change is substantial is a question of law which we review de novo. *Id.* A substantial or material change in the circumstances should be such that it would be unjust or inequitable to strictly hold either party to the judgment. *Id.* Because the trial court's legal determination is intertwined with its factual findings, we nevertheless give weight to the trial court's decision. *Id.*

¶ 9. Here, the factual findings of Judge Dreyfus are supported by the evidence and are not contested by the parties. Judge Dreyfus found that James' income at the time of divorce was $568,000, which was the income cap under the percentage formula ordered by Judge Haughney. This figure included James' base salary of $265,000, his bonus of $270,000 and country club and car allowances of $9000 each. Following the divorce, James' employment was terminated and he received approximately $1.2 million dollars from stock options. At the time of the hearing, Judge Dreyfus found that James' new employment provided "earned income . . . at

---

[3] All statutory references are to the 1999–2000 version.

a significantly reduced level." The record reflects that James' year 2000 earnings were approximately $179,318.

¶ 10. Lynda's actual income at the time of divorce was $64,000; however, Judge Haughney imputed income of $75,000 based on the potential that Lynda would receive a bonus. At the time of the postjudgment hearings, Judge Dreyfus determined Lynda's income to be approximately $60,000.

■

¶ 11. James sought an order modifying his percentage maintenance obligation from 35% to 25% of his income. Judge Dreyfus denied this request, concluding that the percentage formula had already significantly affected Lynda's maintenance in direct proportion to James' salary decrease. We agree. A substantial change in circumstances envisions a circumstance in which it would be unjust or inequitable to strictly hold an obligor to the judgment. *Id.* James has failed to demonstrate such a circumstance in this case. Although James' income has undisputedly decreased, so has his corresponding maintenance obligation. He has failed to illustrate how this renders the original percentage maintenance award unjust or inequitable to him now.

¶ 12. James additionally argues that a modification is warranted by Lynda's self-created and decreased need for maintenance. In support, James points to Lynda's decision to terminate her employment the day after the divorce was granted and her ensuing decision to become self-employed, resulting in earnings far less than her earnings at the time of the divorce. James argues that "[a]ny financial problems suffered by [Lynda] as a result of her day after divorce career change was of her own making." However, this issue came before Judge Dreyfus via James' motion for a

reduction in maintenance, not via any motion from Lynda seeking an increase in maintenance as a result of career change or her reduced income. In short, Lynda was not seeking more maintenance; rather, she was accepting less under the percentage formula.

¶ 13. Moreover, Judge Haughney's original maintenance award in this case was grounded more on the fairness component of maintenance rather than the support component (*see LaRocque v. LaRocque,* 139 Wis. 2d 23, 32–33, 406 N.W.2d 736 (1987)), a matter noted in our prior opinion in the earlier appeal. *Dahlke,* unpublished slip op. at ¶ 8. Although both parties have suffered declines in their respective incomes, the percentage maintenance order has adequately and fairly accommodated this change. In summary, Lynda's decreased income is not relevant to James' argument for a reduction in maintenance.

¶ 14. Nor are we persuaded by James' argument that Lynda's need for maintenance has substantially decreased due to her decision not to contribute to their daughters' college expenses. James' argument is based on Lynda's budget allocation at trial of $2649 per month for one-half of the college expenses. Now that the adult daughters have graduated from college, James reasons that Lynda can no longer claim that expense. However, while Judge Haughney recognized the college expenses as legitimate expenses for purposes of the parties' budgets, the judge did not order either party to pay for the educational needs of their adult children. As Judge Dreyfus correctly noted in his postjudgment decision, a family court does not have the authority to order the

parties to pay for the education of their adult children. *See Resong v. Vier*, 157 Wis. 2d 382, 389, 459 N.W.2d 591 (Ct. App. 1990).

¶ 15. In short, the parties' representations as to the children's college expenses did not influence Judge Haughney's original maintenance determination. Indeed, our previous opinion recognized as much when we said, "[t]he bottom line on Lynda's budget did not impact the fairness decision the circuit court ultimately made." *See Dahlke*, unpublished slip op. at ¶ 10. Therefore, any decrease in Lynda's expenses would not constitute a substantial change of circumstances.

¶ 16. Under the facts of this case, we uphold Judge Dreyfus's ruling that James failed to demonstrate a substantial change in circumstance warranting a modification or reduction of maintenance.[4]

### *Reimbursement of College Expenses*

¶ 17. James next argues that the trial court erred in denying his motion to recover one-half of all college expenses he paid for the parties' adult daughters. James contends that he is entitled to reimbursement on the basis of unjust enrichment. He argues that Lynda represented to Judge Haughney that she would be contributing one-half of the college expenses and that Judge Haughney awarded maintenance based on that representation.

¶ 18. We begin by addressing James' attempt to invoke the law of "unjust enrichment" in the context of

---

[4] Our holding should not be misconstrued. We do not hold that a substantial change in circumstances cannot ever be established under a percentage maintenance order. We simply hold *under the facts of this case* that the percentage maintenance order has adequately addressed the change in the parties' circumstances.

this divorce action.[5] James' argument in support of his "unjust enrichment" claim alternates between the common law of unjust enrichment and the family court's equitable powers in a divorce action. In providing a framework for his argument, James cites to the elements of an "unjust enrichment" claim as set forth in the Wisconsin Jury Instructions for civil actions. *See* WIS JI—CIVIL 3028. Those elements are: (1) a benefit conferred upon the defendant by the plaintiff, (2) knowledge or appreciation of the benefit by the defendant, and (3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him or her to retain it without paying the value thereof. *Id*. James argues that he has established these essential elements of "unjust enrichment" and is thus entitled to reimbursement for one-half of the college expenses he has paid.

¶ 19. James argues that *Brabec v. Brabec*, 181 Wis. 2d 270, 510 N.W.2d 762 (Ct. App. 1993), and *Jacobson v. Jacobson*, 177 Wis. 2d 539, 502 N.W.2d 869 (Ct. App. 1993), support his argument that the common law cause of action for unjust enrichment is applicable in divorce proceedings. While these and other cases have used the term "unjust enrichment" to describe a financial windfall to one party to a divorce action, we disagree that these utterances have signaled that a civil claim for unjust enrichment can be litigated within the context of a divorce action. To the contrary, the *Brabec* court used the phrase "unjust enrichment" when considering the fairness objective of maintenance, stating,

---

[5] We note that Lynda raises issue preclusion with respect to James' claim for reimbursement based on the payment of college expenses. Regardless, we choose to address the issue.

> The fairness objective is meant to ensure a fair and equitable financial arrangement between the parties in each individual case; to "compensate the recipient spouse for contributions made to the marriage, give effect to the parties' financial arrangements, or prevent unjust enrichment of either party."

*Brabec*, 181 Wis. 2d at 277 (quoting *LaRocque*, 139 Wis. 2d at 33). Similarly in *Jacobson*, the court used the phrase "unjust enrichment" to describe a financial windfall to one of the parties, not as a judicial declaration that an unjust enrichment claim can be litigated in a divorce proceeding. *See Jacobson*, 177 Wis. 2d at 548.

¶ 20. Furthermore, a common law claim of "unjust enrichment" involves aspects of civil procedure that do not apply to actions affecting the family. A common law claim of "unjust enrichment" contemplates its own set of pleadings, separate and distinct from those in a family court action. *See, e.g.,* WIS. STAT. ch. 801; WIS. STAT. § 767.085 (setting forth requirements for a petition in any action affecting the family); WIS. STAT. § 767.025 (setting forth filing procedures for orders for enforcement and modification of family law judgments). Moreover, as the jury instructions suggest, an unjust enrichment action can be tried to a jury whereas juries are not available in a divorce action.

¶ 21. Finally, we find no precedent, nor does James cite to any, that has litigated a common law action for "unjust enrichment," or even the application of the civil elements of an action for unjust enrichment, in an action affecting the family. We conclude that a common law action for unjust enrichment cannot be litigated in a divorce action.

██

¶ 22. Insofar as James' invocation of the law of unjust enrichment is addressed to the equitable powers of the family court, we see no misuse of discretion by Judge Dreyfus in denying James' request that Lynda reimburse him for one-half of the children's college expenses. As discussed earlier in this opinion, Lynda had no legal obligation to pay the expenses of her adult daughters' educations. Also as noted, although Judge Haughney recognized the college expenses as an appropriate budget request, the judge did not impose any obligation on either party to pay such expenses, nor did Judge Haughney base the maintenance award on any potential contributions either party might choose to make regarding those expenses. Moreover, while Lynda claimed one-half of the monthly college expenses on her budget, James claimed all of the monthly college expenses on his budget. Thus, James' budget reflects an intention to do exactly what he did—pay for all of his daughters' college expenses.

¶ 23. In summary, Judge Haughney's maintenance award was not influenced by the parties' budget representations regarding their intentions as to the college expenses. Therefore, when Lynda chose not to contribute to those expenses, James was not entitled to an equitable reduction of his maintenance obligation.

¶ 24. We conclude that Judge Dreyfus did not err in the exercise of his discretion by denying James' request for the reimbursement of one-half of college expenses he paid for the parties' daughters.

*James' Year 2000 Maintenance Obligation*

¶ 25. James' final argument is that Judge Dreyfus erred when he included James' interest and dividend income when calculating James total income for the

year 2000, producing a total income of $325,127.01. This figure included James' W-2 income of $179,318.01,[6] interest income of $29,654, dividend income of $45,996 and bonus income of $64,159.[7] Based upon that determination, Judge Dreyfus calculated the total maintenance due for the calendar year 2000 to be $78,794 pursuant to the percentage formula. Subtracting maintenance already paid by James to Lynda, Judge Dreyfus determined that James owed Lynda an additional amount of $30,013.28.

¶ 26. In support of his argument, James points out that Judge Haughney did not include his interest and dividend income when originally determining his income under the percentage formula. Thus, James reasons that Judge Dreyfus erroneously modified the judgment by including his interest and dividend income under the most recent calculation of his income for the year 2000. To answer this challenge, we must construe the judgment. That exercise presents a question of law that we review de novo. *See Rohan Motor Co. et al. v. Industrial Comm. of Wis.*, 188 Wis. 223, 227–28, 205 N.W. 930 (1925).

¶ 27. The maintenance provisions of the judgment state:

> The court concludes that an award of 35% of [James'] earnings between $100,000.00 and $568,000.00 meets the Need objective and the Fairness objective for [Lynda's] request for maintenance.

Contrary to James' assertions, the judgment places no

---

[6] We note that the trial court used James' W-2 income as indicated for Medicare purposes so as to take into account monies paid by James into a 401k account.

[7] The trial court denied Lynda's request to include James' capital gains as taxable income subject to maintenance.

limitation, employment or otherwise, on the "earnings" to be considered for purposes of maintenance.

¶ 28. Judge Dreyfus noted that at the time of the judgment, James' employment income alone satisfied the $568,000 cap under the formula. Therefore, Judge Haughney was not required to look to James' additional income sources to fulfill the fairness and support objectives of maintenance. Judge Dreyfus additionally observed that while the judgment clearly limits the *amount* of income to be considered for purposes of maintenance, it sets forth no limitation on the *type* of income to be considered.

■■

¶ 29. The mere fact that James' employment income at the time of the divorce met the ceiling under the percentage formula does not mean that other sources of income were off limits if James' employment income later fell below that ceiling. Therefore, Judge Dreyfus' decision to include James' interest and dividend income, resulting in total income of $325,127, is consistent with the terms and goals of the judgment.

¶ 30. Because James' year 2000 employment income was significantly less than the $568,000 ceiling set forth in the judgment of divorce, Judge Dreyfus looked to see if the judgment excluded James' interest and dividend income from the maintenance formula. Clearly, it does not. We uphold Judge Dreyfus' interpretation of the judgment.[8]

---

[8] James also relies on *Hefty v. Hefty*, 172 Wis. 2d 124, 493 N.W.2d 33 (1992). There the supreme court approved a maintenance award based on a percentage of the payor's employment earnings and future bonuses. *Id.* at 130–33. James' reliance on *Hefty* is a nonstarter. Simply because the *Hefty* court upheld a judgment that limited the maintenance calculation to salary

## CONCLUSION

¶ 31. We conclude that the trial court properly exercised its discretion in denying James' motion to modify maintenance based on its finding that James' reduced income did not constitute a substantial change of circumstances. We further conclude that James is not entitled to reimbursement of the college expenses he voluntarily paid on behalf of the parties' adult daughters. Finally, we uphold the trial court's inclusion of James' interest and dividend income when determining James' maintenance obligation for the calendar year 2000. We therefore affirm the postjudgment orders.

*By the Court.*—Order affirmed.

---

and bonuses does not mean that another court must do likewise when the judgment is worded differently. Here, the judgment is worded differently from that in *Hefty*. The judgment extends to all forms of income earned by James.